# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| EDWARD EUGENE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV419-038 |
| | ) | |
| CHATHAM COUNTY - | ) | |
| SAVANNAH, GA, *et al..*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, Edward Eugene Davis, brings this 42 U.S.C. § 1983 action against various state officials, a municipal entity, and a private citizen involved in his arrest and prosecution.[1]  Doc. 1.  The Court granted his request to pursue his case *in forma pauperis* (IFP), doc. 4, and he returned the necessary forms.  Docs. 5 & 6.  The Court now screens the Complaint pursuant to 28 U.S.C. § 1915A, which requires the immediate dismissal of any *pro se* complaint

---

[1]    In his Complaint, Davis names Chatham County Fire Chief Joseph F. Bandy, III, Metropolitan police detective Abby Brown, Assistant District Attorneys Lindretta G. Kramer and Margaret H. DeLeon, Chief Assistant Public Defender William S. Lewis, and civilian witness Teena Lynette Branch, as well as Bandy's "employer" "Chatham County - Savannah, Georgia."  Doc. 1 at 4.

that fails to state at least one actionable claim.[2]

## I.   BACKGROUND

Fire Chief Bandy "instigated a criminal presentment" against Davis by calling 911 "to report an alleged violent crime."  Doc. 1 at 6.  Davis contends Bandy was racially motivated, as he relied upon a "false report" by an "intoxicated white woman" over Davis' objections.  *Id.* at 7.  Based on that "false report," Davis was arrested by Det. Brown for "[a]ggravated assault by strangulation" of Branch, his then-girlfriend.  Id. at 7-8.  He contends he was arrested without probable cause and Det. Brown perjured herself at his preliminary hearing.  *Id.* at 8.  He has been railroaded by the prosecution and deficiently represented by his public defender.  *Id.* at 12-13.  For this, Davis seeks an apology and $8.5 million in compensatory and punitive damages.  *Id.* at 15.  His state prosecution, meanwhile, remains pending.  *See State v. Davis*, CR17-1058-J2 (Chatham Super. Ct.) (status "open" as of March 13, 2019, with a jury trial on charges of aggravated

---

[2]  Because the Court applies Fed. R. Civ. P. 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff.  *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

assault and *rape* set to begin April 8, 2019).

## II.   ANALYSIS

Davis waves at claims for false arrest or malicious prosecution.  A claim for false arrest derives from the constitutional right to be free from "unreasonable searches and seizures."   U.S. CONST. AMEND. IV.   A warrantless arrest made without probable cause violates the Fourth Amendment and forms the basis of a § 1983 claim for damages.  *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996); *Max v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990); *Von Stein v. Bresher*, 904 F.2d. 572, 578 (11th Cir. 1990).  In a case of continuing detention (as here), however, "false imprisonment ends once the victim becomes held pursuant to [legal] process — when, for example, he is bound over by a magistrate or arraigned on charges."  *Wallace v. Kato*, 549 U.S. 384, 389-90 (2009); *see Davis*, CR17-1057.

Once an arrestee's unlawful detention becomes a product of legal process, his continued custody may still be unlawful, but any damages suffered after that point must be recovered under the "entirely distinct" tort of malicious prosecution, "which remedies detention accompanied not by the absence of legal process, but by *wrongful institution* of legal

3

process." *Id*. at 390.  In other words, the torts of malicious prosecution and false imprisonment are distinct, and the former supplants the latter after legal process is initiated.

The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003).  An essential element of a malicious prosecution claim, however, is the termination of the criminal prosecution in the plaintiff's favor.  *Id*. at 882.  In the case at bar, there is no allegation that the Chatham County criminal case has been resolved in Davis' favor.  *See* doc. 1; *see Davis*, CR17-1058.  Accordingly, he does not state a claim for malicious prosecution and any such claim against any of the named defendants should be **DISMISSED**.  Even if he had pled (or could plead) favorable termination, several of the named defendants are immune from or otherwise not susceptible to suit under § 1983.[3]

---

[3]   Davis has sued several individuals not subject to § 1983 liability under any theory. District attorneys, for example, are absolutely immune from § 1983 liability where their alleged malfeasance stemmed entirely from their "function as advocate." *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) ("[A]bsolute immunity extends to a prosecutor's 'acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State. . . .'"); *see Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Jackson v. Capraun*, 534 F. App'x

Davis also complains that he has been "defamed" by Bandy's report and Det. Brown's arrest. Doc. 1 at 6. Any defamation claims against the arresting police officers under § 1983, however, fail as a matter of law. *Paul v. Davis*, 424 U.S. 693, 711-12 (1976); *Walker v. Atlanta Police Dep't Public Affairs Unit*, 322 F. App'x 809, 810 (11th Cir. 2009) ("defamation

---

854, 859 (11th Cir. 2013) (prosecutor entitled to absolute immunity for initiating prosecution even if he did so with malicious intent).

Likewise, defense counsel, whether court-appointed or privately retained, does not qualify as a state actor for purposes of § 1983 liability. *Polk County v. Dodson*, 454 U.S. 312, 318 n. 7 (1981) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."); *Pearson v. Myles*, 186 F. App'x 865, 865 (11th Cir. 2006) (court-appointed defense counsel did not act under color of state law and thus was not subject to liability under § 1983); *Deas v. Potts*, 547 F.2d 800, 800 (4th Cir. 1976) ("A private attorney who is retained to represent a criminal defendant is not acting under color of state law."), *cited in Robinson v. Bernie*, 2007 WL 80870 at *1 (S.D. Ga. Jan. 8, 2007).

Should Davis actually be attempting to bring a legal malpractice claim against his public defender, of course, such a claim is governed by state law and must be brought in state court. *See e.g., Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996) (federal law does not provide a cause of action for legal malpractice); *Ray v. Tenn. Valley Auth.*, 677 F.2d 818, 825 (11th Cir. 1982) (federal courts lack jurisdiction over a legal malpractice under state law because diversity is lacking and the claim does not present a federal question).

Finally, witnesses in a criminal action enjoy absolute witness immunity. *Briscoe v. LaHue*, 460 U.S. 325, 328 (1983). And, to the extent Branch is not currently a witness in the prosecution and merely a private citizen who reported herself the victim of a crime, she is of course not acting under color of law. A successful § 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Harvey v. Harvey*, 949 F.2d 1127, 1129 (11th Cir. 1992)). The victim to a crime is not a state actor and thus not susceptible to § 1983 liability. *Taylor v. Taylor*, 2015 WL 4601166 at *6 (S.D. Ga. July 29, 2015).

by a police officer is not actionable under 42 U.S.C. § 1983"); *Lowe v. Dollison*, 2012 WL 1555446 at * 3 (E.D. Tex. Mar. 2, 2012) ("defamation, libel, and slander are matters for state law and not the proper subject of a Section 1983 lawsuit."), cited in *Young v. Heap*, 2016 WL 4987331 at *1 (S.D. Ga. Aug. 8, 2016).  Although defamation falls outside § 1983's ambit, district courts have "supplemental jurisdiction over all claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Nevertheless, when a court dismisses all "claims over which it has original jurisdiction," like Davis' other § 1983 claims, it "may decline to exercise supplemental jurisdiction."  *Id*. at (c).  To the extent that the Court could hear his defamation claim under its supplemental jurisdiction, it should decline to do so.  This claim too should be **DISMISSED**.

Moreover, to the extent that Davis asks this Court to weigh in on the sufficiency or credibility of the evidence against him, *see* doc. 1 at 5-11, any ruling by this Court could substantially interfere with the results reached in the state court proceeding.  *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003) (noting the importance of "whether the federal proceeding will interfere with an ongoing state court proceeding" in

6

determining whether abstention is appropriate).  Pursuant to *Younger v. Harris*, 401 U.S. 37, 53 (1971), federal courts must abstain from hearing claims that would interfere with pending state criminal proceedings, provided that the party seeking federal relief has an adequate remedy at law and has not shown that he will suffer irreparable injury.  Plaintiff, obviously, remains free to allege the same constitutional violations at issue here in his state criminal proceedings.  He thus cannot demonstrate the lack of an adequate remedy at law nor irreparable injury.  *Younger*. 401 U.S. at 47 ("Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term.").  Thus, these are arguments for the state court.  *See also Heck v. Humphrey*, 512 U.S. 477, 487 n. 8 (1994) ("[I]f a state criminal defendant brings a federal civil-rights lawsuit during the pendency of his criminal trial, appeal, or state habeas action, abstention may be an appropriate response to the parallel state-court proceedings.").[4]  Any claim regarding the evidence in his criminal proceedings must be **DISMISSED**.

---

[4]    Indeed, to the extent that his allegations implicate the validity of his continued detention and he seeks immediate or speedier release, § 1983 affords Davis no remedy: "[A] prisoner in state custody cannot use a § 1983 action to challenge the fact or

## III.  CONCLUSION

In sum, Davis' Complaint should be **DISMISSED** for failure to state a claim upon which relief can be granted.[5]  Meanwhile, it is time for plaintiff to pay his filing fee.  His PLRA paperwork reflects $0 in average monthly deposits over the six month period prior to the date of his Prison Account Statement.  Doc. 5.  He therefore owes no initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula).  Plaintiff's custodian (or designee) shall therefore set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside

---

duration of his confinement. . . .   He must seek federal habeas corpus relief (or appropriate state relief) instead." *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (quotes and cites omitted); *Heck*, 512 U.S. at 481 (1994) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983.").  And before he can bring a federal habeas action, he must first exhaust his available state remedies through either a direct appeal or another petition for state collateral relief. *Wilkinson*, 544 U.S. at 79 (federal "habeas corpus actions require a petitioner fully to exhaust state remedies, which § 1983 does not"); 28 U.S.C. §§ 2254(b), (c).

[5]  Although the Court sees no apparent basis upon which the deficient claims could be amended, plaintiff's opportunity to object to this R&R within 14 days affords him an opportunity to resuscitate them.  He may submit an Amended Complaint during that period if he believes it would cure the legal defects discussed above. *See Willis v. Darden*, 2012 WL 170163, at * 2 n.3 (S.D. Ga. Jan. 19, 2012) (citing *Smith v. Stanley*, 2011 WL 1114503, at * 1 (W.D. Mich. Jan. 19, 2011)).  To state a claim, however, plaintiff must be able to both plead the requisite elements of a § 1983 claim *and* identify a defendant who is not immune from suit.

amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.[6]

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of

---

[6] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event he is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

rights on appeal.  11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

    **SO ORDERED AND REPORTED AND RECOMMENDED**, this 18th day of March, 2019.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA